FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

04 MAY 27 PM 4: 11

CLERK-ALBUQUERQUE

BARBARA (JEANA) WALTON,

Plaintiff,

v.   CIV NO. 01 1337 LH/WDS

WASTE MANAGEMENT OF NEW
MEXICO, INC., a corporation,

Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Defendant Waste Management of New Mexico, Inc. ("Waste Management" or the "Company") submits the following response to Plaintiff's Motion for Attorneys' Fees ("Motion") and her Memorandum in support thereof.

Plaintiff's request that she be awarded the full $205,470 in attorneys' fees she seeks is unreasonable. As set forth more fully below, Plaintiff's fee award should be reduced because the hourly rates sought by her counsel are unreasonably high for the community, and the time records submitted by her counsel are replete with entries reflecting block billing, vague descriptions of work performed, clerical work performed by attorneys, and other problems that the Tenth Circuit and judges in this District have determined warrant reductions in fee awards. Plaintiff also inappropriately seeks to have Waste Management pay for numerous hours of attorney time spent on unnecessary or unsuccessful issues, including an unsuccessful motion to amend her Complaint to add Waste Management, Inc. as a defendant in this matter, a motion to compel discovery that Plaintiff quickly withdrew, and various issues related to the contemplated

disqualification of Waste Management attorney Kandace Majoros and her potential deposition and trial testimony, none of which ever took place.

## Argument

Under 42 U.S.C. § 1988, a prevailing party in an action brought under 42 U.S.C. § 1981 may be awarded a "reasonable attorney's fee." A prevailing plaintiff in an action brought under Title VII of the Civil Rights Act of 1964 also may recover a "reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). Waste Management does not dispute that, as of the filing of this response, Plaintiff is the prevailing party in the jury trial of this action on her Title VII and Section 1981 claims.[1] The Company does, however, dispute the reasonableness of her fee request.

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar' amount of a fee . . . . The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This standard applies to fee awards under § 1988 and Title VII. Griffith v. Colo. Div. of Youth Servs., 17 F.3d 1323, 1328 (10th Cir. 1997).

### I. PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES IS EXCESSIVE BECAUSE IT INCLUDES TIME NOT REASONABLY EXPENDED ON THIS LITIGATION.

"The first step in calculating fee awards is to determine the number of hours reasonably spent by counsel for the party seeking the fees." Ramos v. Lamm, 713 F.2d 546, 553 (10th Cir. 1983). The plaintiff's "burden in an application for attorneys' fees is to 'prove and establish the reasonableness of each dollar, each hour, above zero.'" Jane L. v. Bangerter, 61 F.3d 1505, 1510

---

[1] Currently pending before the Court is Waste Management's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For Remittitur Or New Trial. Waste Management respectfully suggests that decisions on Plaintiff's Motion for Attorneys' Fees and Motion to Tax Costs should be deferred until after the Court rules on the Company's post-trial motion.

(10th Cir. 1995) (quoting Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1210 (10th Cir. 1986)). For this reason, counsel seeking a fee award "must keep meticulous, contemporaneous time records [that] reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks – for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on." Ramos, 713 F.2d at 553.

In evaluating the reasonableness of a fee request, the Court should review the hours reported by Plaintiff's counsel in the same way that "a senior partner in a private firm would review the reports of subordinate attorneys when billing clients . . . ." Id. Counsel for a prevailing plaintiff must exercise billing judgment in requesting a fee award so that hours that would not be properly billed to the client are not billed to the adverse party. United Phosphorous, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1239 (10th Cir. 2000); see also Ramos, 713 F.2d at 554 (observing that "lawyers charging fees to adversaries rather than clients may be less likely to carefully scrutinize the hours spent to determine if payment for the task performed was justified"). Likewise, the District Court must exclude from the fee award hours that were not reasonably expended. Ellis v. Univ. Of Kan. Med. Ctr., 163 F.3d 1186, 1202 (10th Cir. 1998). To do so, the District Court should "distinguish 'raw time' from 'hard' or 'billable' time to determine the number of hours reasonably expended." Ramos, 713 F.2d at 553.

In Robinson, the Tenth Circuit described it as "unfortunate" when counsel for prevailing parties "support the reasonableness of their fee applications by dumping a pile of timesheets on their adversary and the court for analysis." 160 F.3d at 1285 n.11. Such is the case here. A thorough review of the "raw" time records of Plaintiff's counsel reveals numerous shortcomings that, collectively, justify a reduction in the fees awarded to Plaintiff.

### A. Plaintiff's Requested Fees Should Be Reduced Due To Block Billing And Vague Descriptions Of Work Performed.

A court "is justified in reducing the reasonable number of hours if the attorneys' time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time." Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998); see also Robinson, 160 F.3d at 1284 ("The use of billing practices that camouflage the work a lawyer does naturally and quite correctly raises suspicions about whether all the work claimed was actually accomplished or whether it was necessary. This concern is particularly important in a situation where a party is seeking to have his opponent pay for his own lawyer's work.").

Block billing and vague descriptions (such as "worked on" a brief) are reflected in scores of Plaintiff's attorneys' time records. In these time entries, which are listed on pages 1-9 of Exhibit A attached hereto, it is simply impossible to determine how much time was spent on specific tasks and issues and whether the expended time was reasonable. As but a few examples, attorney Whitney Warner billed a total of 3.8 hours for eight different tasks on 8/23/02; a total of 7.0 hours for four different tasks on 1/19/03; a total of 5.8 hours for four different tasks on 3/21/03; and a total of 6.9 hours for nine different tasks on 3/4/04.

These problems are all the more inexcusable given that in some block time entries early in the case, Ms. Warner did denote the amount of time spent on each particular task. See Motion Exhibit 4, pp. 1-2 (time entries for Ms. Warner for 3/5/02, 5/13/02). In addition, as the case got closer to trial, Plaintiff's counsel (or at least attorney Repps Stanford) appeared to make an effort to bill separate amounts of time for discretely identified tasks. See id. pp. 22-31 (time entries for February and March 2004).

## B. Plaintiff Should Not Be Awarded Fees For Attorney Time Spent On Unsuccessful Issues And Claims.

Waste Management recognizes that the Tenth Circuit has "refused to permit the reduction of an attorney's fee request if successful and unsuccessful claims are based on a common core of facts." Jane L., 61 F.3d at 1512 (internal quotation marks omitted). In this case, Plaintiff's state law retaliatory constructive discharge claim and the constructive discharge aspect of her Title VII and Section 1981 retaliation claims were predicated on the same core of facts that she claimed constituted discrimination and retaliation, *but it was that very commonality that contributed to dismissal of the constructive discharge claims on summary judgment.* See Rodriguez v. America Online, Inc., 183 F. Supp. 2d 1340, 1356 (D.N.M. 2001) (plaintiff claiming constructive discharge must demonstrate that working conditions were intolerable by showing existence of aggravating factors beyond alleged discriminatory acts of the employer).

Dismissal of these claims significantly altered Plaintiff's potential damages recovery by eliminating her ability to recover back pay or front pay. Derr v. Gulf Oil Corp., 796 F.2d 340, 342 (10th Cir. 1986). In August 2003, Plaintiff produced an estimate of her alleged back pay and front pay damages that totaled nearly $350,000. [See Plaintiff's Fourth Supplemental Responses, attached hereto as Exhibit B] Presumably, that total would have increased by the time of trial in March 2004. However, after dismissal of the constructive discharge claims, Plaintiff was able to recover only $6,625 in lost wages at trial. This drastic difference constitutes a partial success sufficient to justify an overall reduction in the fee award sought by Plaintiff. Because it cannot be determined from the submitted time records how much time Plaintiff's counsel devoted to pursuing these unsuccessful claims,[2] the amount of the reduction is in the

---

[2] The only readily identifiable entries relating to these claims are for 3.9 hours spent by Mr. Stanford on March 21 and March 22, 2004 for researching and drafting a jury instruction on

Court's discretion. See Case, 157 F.3d at 1252 (upholding District Court's reduction of fees sought by plaintiff's counsel because "billing records did not show which hours related to [the unsuccessful] arguments. . . . The District Court was well within bounds to consider lack of success on the [unsuccessful] issues and its own inability to segregate appellants' billing records for time spent on the issues to support a general reduction in time.").

In addition, as reflected in pages 10-17 of Exhibit A, Plaintiff's attorneys spent many hours on other issues and tasks that were unsuccessful, unnecessary, or both, including the following:

### 1. Multiple Unsuccessful Attempts to Add Waste Management's Parent Company To The Case.

Plaintiff's counsel collectively spent at least 64.6 hours (and some part of an additional 9.7 hours) starting in early August 2003 pursuing an unsuccessful effort to bring Waste Management, Inc. ("WMI") into this case. This total represents only the hours easily identified from the attorneys' August-December 2003 time entries. After the Court summarily denied as untimely Plaintiff's motion to amend her complaint to add WMI as a defendant, Plaintiff's counsel spent additional time pressing this issue in February and March 2004 by producing and identifying approximately 40 proposed trial exhibits directed at the single employer issue and WMI's financial condition that were excluded by the Court, preparing a proposed jury instruction on the single employer issue that was not given, and making unsuccessful mid-trial efforts to introduce evidence of WMI's financial condition. [See, e.g., Ex. A, p. 14 (2/2/04 entry by Ms. Warner for 2.0 hours researching "WMI financial and corporate information" for potential trial exhibits; id. at 17 (3/11/04 entry by Mr. Stanford for 4.6 hours that included legal

---

these claims, a month *after* the Court's dismissal of the claims on summary judgment. See Motion, Ex. 4, p. 32.

research on the single employer issue)] Therefore, an appropriate additional reduction should be made to account for this later attorney time, the amount of which cannot be fully determined from the time records.

### 2. Withdrawn Motion to Compel Discovery.

Plaintiff also seeks recovery for work on a motion to compel discovery responses that her counsel filed on April 3, 2003 [dkt. 65]. Plaintiff's counsel promptly withdrew the motion two days after defense counsel objected that it had been filed without first engaging in the good faith consultation with opposing counsel required by Fed. R. Civ. P. 37(a)(2)(B). [See Letter from J. Chasson to W. Warner dated 4/9/03, attached as Exhibit C; Notice of Withdrawal filed 4/11/03 (dkt. 72)]. Because this motion was unnecessary and premature, fees for time spent on the motion should be denied.

### 3. Unused Deposition of George Kachirisky.

Plaintiff seeks fees for attorney time related to the deposition of George Kachirisky, which was not used by either party at trial or in any summary judgment briefing in this case. Because the cost is not taxable against Waste Management, see Defendant's Response to Plaintiff's Motion to Tax Costs at pp. 1-2, the Company also should not be required to pay for the time spent by Plaintiff's counsel preparing for and taking this unused deposition.

### 4. Disqualification and Deposition of Kandace Majoros That Never Took Place.

Included in pages 10-17 of Exhibit A are 39 time entries for (1) discussing and researching a contemplated motion to disqualify defense attorney Kandace Majoros that was never filed, (2) preparing for deposition and trial testimony of Ms. Majoros that never took place, and (3) opposing Waste Management's motion for protective order that this Court summarily granted at the pretrial conference on March 16, 2004, at the same time it quashed subpoenas

Plaintiff served on Waste Management and Brown & Bain for billing records related to this case – records that Plaintiff's counsel stated at the pretrial conference were for use in cross-examining Ms. Majoros.

If Plaintiff cannot be awarded fees or costs associated with the Kachirisky deposition that was taken but not used, then she certainly should not be compensated for fees and costs related to preparing for a deposition and trial testimony that never occurred. Indeed, it appears that even Plaintiff agrees with this proposition to some extent, as she made a conscious decision not to seek reimbursement of the cost of serving the quashed billing records subpoena on Waste Management. [Pl. Mot. to Tax Costs, Ex. A, Subpoena Expenses (lining out the charge dated 3/15/04 for serving subpoena on Waste Management)]

### C. Plaintiff Should Not Be Awarded Fees For Excessive Hours Spent On A Task Or Unnecessary Use Of Multiple Attorneys.

Identified at pages 18-20 of Appendix A are entries for attorney time that was unreasonably expended. Many of the time entries are those of second-year attorney Repps Stanford for unreasonable amounts of time spent on work such as lengthy and repeated review of the same deposition transcripts, legal research, and drafting various motions.

For example, between February and April 2003, Mr. Stanford spent more than 15 hours on 11 different occasions reviewing the same depositions and related documents regarding Plaintiff's spoliation claim. Later, on March 2, 2004, Mr. Stanford billed another 2.4 hours for "review[ing] Walton depositions," without denoting the purpose for the review, and on March 4, 2004, he billed 1.5 hours for reading Waste Management's 15-page consolidated motion *in limine*. Of the 8.3 hours he billed on March 21, 2003, only half were was consumed by actually taking the referenced depositions: this leaves approximately four hours of time spent on

"preparation of exhibits for depositions," an excessive amount for a clerical task that he should have delegated to a non-attorney.

Other entries reflect unnecessarily duplicative attorney services. Thus, time billed by Ms. Warner for her presence at the March 21, 2003 depositions of Connie Apodaca and Kimberly Zamora is not properly chargeable to Waste Management because Mr. Stanford took those depositions.[3] [See Apodaca Deposition at pp. 1-2 and Zamora Deposition at pp. 1-2 (excerpts attached hereto as Exhibit D)] Similarly, fees for Mr. Stanford's time spent as the second attorney at the June 2003 mediation (where Waste Management had one attorney), and as the third attorney at a January 2004 "focus group" and at the March 16, 2004 pretrial conference (where Waste Management had two attorneys) should not be charged to Waste Management. To the extent that his attendance at these events provided Mr. Stanford with valuable training as a lawyer, that time should be absorbed by Plaintiff's counsel as part of their overhead costs. Ramos, 713 F.2d at 554 n.4 ("we think that the presence of more than two lawyers during trial or the presence of more than one lawyer at depositions and hearings must be justified to the court. No fees should be awarded for hours reported by lawyers or law clerks who are present at depositions, hearings or trial for the purpose of being trained and who do not participate in or contribute to the proceedings.")[4]

---

[3] Oddly, except for the notation about her presence at the depositions, Ms. Warner's time entries for March 20 and March 21, 2003 are identical (including the exact amount of time billed). This suggests that at least one of these entries is inaccurate.

[4] Although Mr. Stanford argued two motions *in limine* at the pretrial conference, Ms. Warner repeatedly interjected to assist him in his presentations to the Court. Accordingly, Waste Management contends that Mr. Stanford's participation as the third attorney for Plaintiff at the conference was not necessary and that his experience arguing the motions is most properly described as training.

There are also several entries for attorney Christopher Moody starting in February of 2004 that involve reviewing the file, which should be absorbed as an overhead cost, or that appear to be duplicative of work previously been done by other lawyers in the firm. "[I]f the same task is performed by more than one lawyer, multiple compensation should be denied." Ramos, 713 F.2d at 554.

### D. Plaintiff's Counsel Have Unreasonably Billed For Administrative/Clerical Work That Should Not Have Been Performed By Attorneys.

Plaintiff seeks to recover fees from Waste Management for attorney time spent on numerous clerical tasks that should have been performed by a non-attorney staff member. Those billing entries are reflected at pages 21-24 of Exhibit A. As this Court has held, tasks such as reviewing the docket, calendaring dates, making travel arrangements, calling the court and calling opposing counsel's secretary are all "quick tasks that a non-attorney staff member could have performed." Edwards v. Microsoft Corp., No. CV99-1476 SC/DJS, Memorandum Opinion and Order (Aug. 31, 2000), at 7. Time spent attempting to contact opposing counsel, potential witnesses, or jurors and time billed for leaving or listening to voice mail messages is similarly non-recoverable. See Murtagh v. Bd. of County Comm. of Bernalillo Cty., Civ. No. 00-1679 BB/LFG, Memorandum Opinion and Opinion on Attorneys' Fees and Expenses (July 12, 2002), at 9 ("the 'attempt' to call counsel or to send e-mail does not constitute appropriate billing judgment in this Court's opinion"). Entries reflecting attempted contacts and time spent on voice mail messages also are included in pages 21-24 of Exhibit A. No fee award should be made to Plaintiff for any of this time.

### E. Plaintiff Should Not Recover Fees Associates With The Parties' Voluntary Private Mediation.

In an exchange of emails on May 15 and 16, 2003, Plaintiff's counsel agreed that Plaintiff would split evenly with Waste Management the cost of a private mediation, which took place on June 2, 2003. See Defendant's Response to Plaintiff's Motion to Tax Costs, Ex. A.

As Waste Management argues in its Response to Plaintiff's Motion to Tax Costs, Plaintiff should not now, a year later, be permitted to go back on her agreement to divide the costs of the mediation by seeking recovery of her share from Waste Management. Accordingly, Waste Management also should not have to pay for the nearly 30 combined hours billed by Plaintiff's attorneys for preparing for and attending the unsuccessful mediation. [Exhibit A, p. 25] This is particularly true given that the mediation was not a substitute for the required pretrial judicial settlement conference (of which the parties subsequently participated in two).

## II. THE HOURLY RATES SOUGHT BY ALL THREE OF PLAINTIFF'S COUNSEL ARE UNREASONABLE.

Plaintiff correctly identifies the standard for establishing a reasonable hourly rate: the Court must "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." Ramos, 713 F.2d at 555; see also Jane L. v. Bangerter, 61 F.3d at 1510 (stating that hourly rates set by the district court "must reflect the 'prevailing market rates in the relevant community'") (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984).[5] Factors relevant to this determination include fee rates in the local area, the

---

[5] Despite Plaintiff's acknowledgement of this standard, her motion and supporting affidavits are replete with snide references to the presumed hourly rates charged to Waste Management by its Phoenix-based primary defense counsel. See Memorandum in Support of Motion for Attorneys' Fees, at 6-7 (referring to the "high billable rates out-of-state Phoenix counsel from Brown & Bain *undoubtedly* charged Defendant") (emphasis added); Affidavit of Whitney Warner, ¶ 10 (referring to "my *understanding* of the hourly rates Defendant's numerous out of state counsel charged for the same legal services") (emphasis added); Affidavit of Christopher M. Moody, ¶ 11 (same); Affidavit of J. Douglas Foster, ¶ 5 (claiming that Plaintiff's

lawyer's "skill and experience in civil rights or analogous litigation," and the "quality of the lawyer's performance in the case." Id. In this case, even the evidence submitted by Plaintiff strongly suggests that the requested hourly rates of $250 per hour for Mr. Moody, $200 per hour for Ms. Warner, and $150 per hour for Mr. Stanford exceed market rates for employment and civil rights lawyers of comparable skill and experience in the Albuquerque area.

Plaintiff has submitted largely self-serving affidavits from each of her three attorneys, in which each they claim that their requested rates are "very reasonable" or "fair and reasonable" based upon their individual levels of knowledge and experience. [Warner Aff., ¶ 10; Moody Aff., ¶ 11; Stanford Aff., ¶ 7] Curiously, however, none of the three affidavits states that the attorney's requested rate is the rate actually charged to Plaintiff in this case, and only Mr. Moody's affidavit includes any testimony regarding his customary or standard rate, which is a "relevant but not conclusive factor" in determining a reasonable hourly rate. Ramos, 713 F.2d at 555. [See Moody Aff., ¶ 9]

Plaintiff also has submitted affidavits from Albuquerque attorneys J. Douglas Foster and William C. Madison, in which they attest, in identical language, that the rates sought by Plaintiff's counsel are "reasonable and consistent with prevailing market rates in this community" for "lawyers of comparable skill, experience and reputation." [Foster Aff., ¶ 4; Madison Aff., ¶ 5] As an initial matter, neither attorney professes personal familiarity with the

---

counsel's rates are modest compared to the "billable rates and number of litigation hours at which out of state counsel . . . typically charge"); Affidavit of William C. Madison, ¶ 6 (same). As the Tenth Circuit has made clear in Ramos and Jane L., whether the hourly rates of defense counsel are reasonable in Phoenix has no bearing on the question for this Court – whether Plaintiff's attorneys' rates are reasonable in New Mexico. See also Edwards, supra, No. CV99-1476, Mem. Op. at 14, n.5 (denying Plaintiff's request that the Court order disclosure of the billing rates and expended hours of out-of-state defense counsel because "their hourly rates are immaterial to the issue of what a reasonable New Mexico fee is").

skill or experience of Mr. Stanford, who graduated from law school two years ago. Thus, it is difficult to understand how either could opine as to the reasonableness of charging $150 per hour for Mr. Stanford's services. Further, Mr. Madison's testimony is undermined by the fact that, as an attorney with 30 years of experience in New Mexico, he charged a rate of only $165 per hour for the time he spent attempting to mediate a resolution of this case in June 2003. [See Pl. Motion to Tax Costs, Ex. A, Invoice from Madison, Harbour, Mroz & Brennan, P.A.]

In contrast to the rates sought for Plaintiff's counsel are the rates charged by Waste Management's local counsel in this case. Lorna Wiggins' rate for the duration of this matter has been $180 per hour. [Affidavit of Lorna M. Wiggins, attached as Exhibit E, at ¶ 4.] Ms. Wiggins is in a very comparable position to Mr. Moody – she has 20 years of experience practicing law in New Mexico, primarily as an employment and labor law litigator, and she has handled more than 35 cases in federal court, including numerous jury trials. Indeed, she has litigated against Mr. Moody and Ms. Warner in several other matters. [Id. ¶¶ 2-3] Patricia Williams, an attorney in Ms. Wiggins' office with 17 years of experience as a litigator who also performed work on this case, charges a rate of $175 per hour. [Id. ¶ 4] Other attorneys in Ms. Wiggins' office charge rates of $145 per hour (for an attorney with 13 years of experience) and $125 per hour (for attorneys with less than three years of legal experience). [Id.]

In a further effort to support the claimed reasonableness of the rates she requests, Plaintiff cites to the hourly rates awarded to other local counsel in other cases in the District of New Mexico during the past two years. Examination of the opinions in those cases demonstrates, however, that the rates awarded generally were unopposed and that Plaintiff's requested rates exceed those that are reasonable for attorneys of *comparable* knowledge, skill and experience.

Plaintiff first points to the $225 hourly rate awarded to attorney Maureen Sanders in Cochran v. Banyan, Inc., Civ. No. 01-358 JP/RLP, a civil rights case. However, Plaintiff has submitted no information about Ms. Sanders' experience or background, nor does the Court's March 7, 2002 Memorandum Opinion and Order include any such information – an unsurprising fact given that, unlike here, the requested hourly rate was not contested by the defendants. [Mem. Op. at 7] Ms. Sanders' listing on Martindale.com (copy attached as Exhibit F) indicates that she has been a member of the New Mexico bar since 1979, giving her four years more experience than Mr. Moody, 19 years more experience than Ms. Warner, and 23 years more experience than Mr. Stanford.

Plaintiff next points to the same $225 hourly rate for local attorney Philip Davis in Murtagh, supra, Civ. No. 00-1679 BB/LFG, another civil rights case. Again, Plaintiff proffers no information about Mr. Davis except the rate approved for him. In fact, Mr. Davis has been a member of the New Mexico bar since 1978 [see Martindale.com listing, attached as Exhibit G], giving him five more years of experience than Mr. Moody and 20 more years than Ms. Warner. The Court's July 12, 2002 Memorandum Opinion gives no indication that Mr. Davis' requested rate of $225 was opposed by the defendant, and it reveals that Mr. Davis served only as fee counsel in the case, not litigation counsel. [Mem. Op. at 5] In focusing on Mr. Davis' rate, Plaintiff completely ignores the hourly rates found reasonable for the three attorneys who actually litigated the Murtagh case for the plaintiffs: $150 per hour for Kathryn Hammel, who was admitted to the New Mexico bar in 1991 [see Martindale.com listing, attached as Exhibit H]; $135 per hour for Carolyn Nichols, admitted to the New Mexico bar in 1993 [see Martindale.com listing, attached as Exhibit I], and $135 per hour for Shannon Oliver, who appears to have been admitted at about the same time as Ms. Nichols. [See Mem. Op. at 19

(listing rates and noting that in 1998, both Nichols and Oliver had "less than five years legal experience")] Mses. Hammel, Nichols and Oliver all have several years more legal experience than Ms. Warner and Mr. Stanford, yet they were awarded rates significantly lower than those requested here.

In a third local civil rights case cited by Plaintiff, an hourly rate of $225 was found reasonable for Texas attorney David Lopez, who successfully represented the plaintiff in Juarez v. Elkhorn Op. Co., Civ. No. 00-447 WJ/WWD. The Court's December 16, 2002 Memorandum Opinion and Order recognized that Mr. Lopez has "an impressive resume and is no doubt an attorney of extraordinary skill," and that he "may be fairly characterized as a specialist in the field of employment law." [Mem. Op. at 2, 8] Indeed, Mr. Lopez's publicly available resume reveals that he was first admitted to the bar in 1971, has over 30 years of experience in employment and civil rights litigation, and has given scores of presentations just in the last 10 years on various employment law issues. [See Martindale.com listing, attached as Exhibit J] If an attorney of Mr. Davis' caliber and experience merited an hourly rate of $225 just 18 months ago, then it is simply unreasonable for Plaintiff to request that her counsel – who have 12, 27, and 31 fewer years of experience than Mr. Lopez in the same field of law – be awarded hourly rates of $250, $200, and $150.[6]

Finally, Plaintiff points to the hourly rates recently awarded to various counsel in Chavez v. Thomas & Betts Corp., Civ. No. 01-1314 RLP/WDS. However, the Court's January 5, 2004

---

[6] Indeed, in the same opinion, Judge Johnson found that "$115 is a reasonable hourly rate for a third-year associate in this geographical area." [Mem. Op. at 3] As Mr. Stanford has been a member of the bar for less than two years, this should be the maximum reasonable rate for his services. Such a result is all the more appropriate considering that defense counsel in Juarez were from Noeding & Moody, the firm where all of Plaintiff's counsel worked for the first year of this case, and the seventh-year associate who served as lead defense counsel in Juarez and tried the case billed her time at $115 to $140 per hour. [Mem. Op. at 3]

Memorandum Opinion and Order reports that none of the requested rates was opposed by defense counsel [Mem. Op. at 2], and it demonstrates that the experience levels of the attorneys to whom Plaintiff cites exceed the experience levels of Plaintiff's counsel. Attorney Paul Kennedy, for whom a rate of $275 was approved, has 27 years of experience and was formerly a New Mexico Supreme Court Justice; his partner Mary Han, whose approved rate was $225, has 18 years experience in civil rights and litigation; and their associate Kristin Morgan-Tracy, whose approved hourly rate was $200, has nine years of experience. [Mem. Op. at 4; see also Martindale.com listings for Kennedy, Han and Morgan-Tracy, attached as Exhibit K]. Furthermore, another attorney who was admitted to the bar the same year as Ms. Morgan-Tracy and whom the Court described as "experienced in civil rights work" was awarded fees at a lower rate of $150 per hour. [Mem. Op. at 3]

Taking into account the skills and experience of Plaintiff's counsel and their varying degrees of responsibility for litigating this case, the collective weight of all of the foregoing suggests that reasonable hourly rates for Plaintiff's counsel in the Albuquerque community are $200 for Mr. Moody, $150 for Ms. Warner, and $115 for Mr. Stanford.

### Conclusion

For the reasons explained above, Plaintiff has not met her burden to "prove and establish the reasonableness of each dollar, each hour, above zero." Mares, 801 F.2d at 1210. The number of hours reasonably expended by Plaintiff's counsel is less than the 1078.5 hours documented in her attorneys' time records. Furthermore, the hours that the Court determines to be reasonable should be multiplied by the lower hourly rates supported by the evidence rather than the above-market rates requested by Plaintiff.

RESPECTFULLY SUBMITTED this 27th day of May, 2004.

        WIGGINS, WILLIAMS & WIGGINS, P.C.

        By: _____
        Lorna M. Wiggins
        Patricia G. Williams
        Post Office Box 1308
        Albuquerque, New Mexico 87102
        (505) 764-8400

        BROWN & BAIN, P.A.
          Daniel C. Barr
          Jill J. Chasson
          Post Office Box 400
          Phoenix, Arizona 85001-0400
          (602) 351-8000

We hereby certify that a copy of the foregoing was mailed to opposing counsel on this 27th day of May, 2004.

WIGGINS, WILLIAMS & WIGGINS, P.C.

By: _____
Lorna M. Wiggins

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**