## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BARBARA (JEANA) WALTON,

       Plaintiff,

    -vs-                                 Civ. No. 01-1337 LH/WDS

WASTE MANAGEMENT OF NEW MEXICO,
INC., a corporation,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for Remittitur or New Trial (Docket No. 156), filed following entry of the Jury's Special Verdict.  The Court, having considered the Motion, the memoranda of the parties, and the applicable law, and otherwise being fully advised, finds that it is not well taken and will be **denied**.

### BACKGROUND

Following a four-day trial, the Jury returned its Special Verdict in favor of Plaintiff Barbara (Jeana) Walton on all counts, finding that Defendant Waste Management of New Mexico, Inc. ("Waste Management" or "the Company") retaliated against Plaintiff and discriminated against her on the basis of her race.  (Docket No. 151.)  The Jury awarded Plaintiff damages for lost benefits and wages in the amount of $6,625, compensatory damages of $125,000, and punitive damages of $500,000, for a total of $631,625.  Defendant renews its Motion for Judgment as a Matter of Law, originally made at trial following the close of evidence, and alternatively moves for a new trial or remittitur.

**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Waste Management argues that it is entitled to judgment as a matter of law on grounds that Plaintiff did not provide a legally sufficient evidentiary basis for a reasonable jury to find in her favor on her discriminatory hiring, disparate treatment, and retaliation claims and for punitive damages.[1] Specifically, Defendant maintains that Plaintiff failed to show that she was similarly situated to Carol LeSage, who had been offered a human resources position with the Company prior to Ms. Walton. Waste Management also contends that Plaintiff cannot prevail on her disparate treatment claim because she was not subject to an adverse action during her employment, during her employment she expressly denied that she was discriminated against, and no similarly situated employees were treated more favorably than she. Defendant further asserts that Plaintiff did not prove any of the elements of her prima facie case for retaliation.

**Standard of Review**

Judgment as a matter of law "is only proper when 'the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion.'" *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1110 (10th Cir. 2005)(quoting *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)). The Court must not "substitute [its] conclusions for th[ose] of the jury," *id.* (quoting *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1279 (10th Cir. 2003)), and "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position," may the Court grant the motion, *Bristol v. Bd. of County Comm'rs*, 281 F.3d 1148, 1161 (10th Cir. 2002). The Court "must be mindful that a ruling

---

[1] As Defendant also argues, in the alternative, that the award of punitive damages was excessive as a matter of law, justifying either remittitur or a new trial, punitive damages are discussed as a separate topic.

2

which deprives a party of a determination of the facts by a jury 'should be cautiously and sparingly granted.'" *Greene*, 98 F.3d at 560 (quoting *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir.1986)).

In considering a motion for judgment as a matter of law, the Court reviews all the evidence in the record, "construing it and all inferences drawn therefrom most favorably to the nonmoving party, and refrain[s] from making credibility determinations or weighing the evidence." *The Guides, Ltd. v. Yarmouth Group Prop. Mgmt.*, 295 F.3d. 1065, 1073 (10th Cir. 2002)(citing *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000)). A party is entitled to judgment as a matter of law, then, only if there is no legally sufficient evidentiary basis for the claim. *Id.* (citing *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1103 (10th Cir.2001)). In other words, "[u]nless the evidence so overwhelmingly favors 'the movant as to permit no other rational conclusion, judgment as a matter of law is improper.'" *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001)(quoting *Greene*, 98 F.3d at 557).

**Discrimination in Hiring**

Defendant contends that Plaintiff did not prove her hiring discrimination claim because she failed to show that she was similarly situated to Carol LeSage. There was overwhelming evidence presented at trial, however, showing that Ms. LeSage and Ms. Walton applied within a few months of each other for the same advertised position, Human Resource Manager, and that Waste Management, at least initially upon receipt of their applications, considered Ms. LeSage and Ms. Walton to be similarly-situated and qualified applicants for that position. The evidence also showed that while Ms. LeSage, a Caucasian, was offered a managerial, salaried position, albeit one renamed as Human Resources Representative, Ms. Walton, an African American, only a couple months later

was offered the clerical position of Human Resources Specialist at an hourly wage.  Whether Waste Management had mistakenly advertised the position as Human Resources Manager over a period spanning half a year and exactly when the "mistake" was discovered and related to Plaintiff, are, of course, factual determinations made by the Jury.  In any case, the events, when viewed in the light most favorable to Plaintiff, sufficiently give rise to an inference of unlawful discrimination - that because of her race Ms. Walton was treated less favorably in her hire than was Ms. LeSage.

**Disparate Treatment**

Waste Management maintains that Plaintiff presented no evidence to warrant the Jury's determination that an adverse employment action was taken against her on the basis of race. Defendant first argues that Ms. Walton offered no evidence at trial that she was subjected to an adverse employment action.  The Tenth Circuit liberally defines the phrase "adverse employment action."  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (1998).  Such actions are "not simply limited to monetary losses in the form of wages or benefits," but are subject to a case-by-case approach, entailing examination of the "unique factors relevant to the situation at hand."  *Id.* at 532. A "mere inconvenience or an alteration of job responsibilities," however, is not an adverse employment action.  *Id.* (internal quotations omitted)(quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993); also citing with parenthetical comments, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" ); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir.1989)(principal's change in assignment was

not an adverse employment action despite her increased commute and belief that the public perceived the transfer "as a 'nudge towards retirement' ")).

Ms. Walton presented substantial evidence at trial that Defendant denied her the opportunity for advancement in her position; indeed, it was undisputed that no ninety-day evaluation, or formal probationary evaluation of any sort, was ever conducted. This, in turn, resulted in Waste Management's failure to reconsider and possibly upgrade Plaintiff's job title, pay, or status as an hourly employee. Under Tenth Circuit case law, such lost opportunity, particularly when considered in light of the unusual circumstances surrounding Plaintiff's hire to a lesser position than that which had been advertised over a period of many months and most recently had been offered to Carol LeSage, at the very least presents a question of fact as to whether Waste Management's failure to act was an adverse employment action. *See Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217-18 (2003); *Jeffries v. State of Kan.*, 147 F.3d 1220, 1232 (1998)(impact on student's future opportunities due to failure to supervise can constitute adverse employment action; claim must be submitted to trier of fact); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (1993)(evidence of reassignment against plaintiff's wishes to position styled as promotion with promise of raise and opportunity for advancement, but no raise or promotion resulting, satisfies adverse action requirement).

Waste Management next argues that Plaintiff's disparate treatment claim must fail because she admitted that no discrimination occurred: two days before Ms. Walton resigned she responded, "No," when asked by her supervisor whether she felt Waste Management had discriminated against her. Defendant does not maintain, as it cannot, that this statement by Plaintiff is dispositive of her claim. While this and similar facts, such as that Ms. Walton never alleged race discrimination or retaliation during her tenure with the Company, including in her resignation letter, came into

5

evidence at trial, the weight and significance to be accorded them are determinations that lie within the provenance of the Jury and clearly are not grounds for the Court to enter judgment as a matter of law.

Waste Management's final argument regarding the disparate treatment claim is that Plaintiff did not present evidence that similarly situated employees were treated more favorably than she was with regard to receiving a formal ninety-day evaluation, a change in job title, a pay raise, and a change from hourly to salaried pay status. It initially must be noted that

> [a]fter a full trial on the merits, the sequential analytical model adopted from McDonnell Douglas . . . drops out and we are left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taking against the plaintiff based on his race. *Kendrick* [*v. Penske Transp. Servs.*], 220 F.3d [1220,] 1226 [(10th Cir. 2000)](quoting *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th Cir. 1991); *see also Reeves* [*v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)]. In other words, . . . the burden shifting framework of McDonnell Douglas is largely irrelevant and the issue is whether the adverse employment action was motivated by race." *Stewart* [*v. Adolph Coors. Co.*], 217 F.3d [1285,] 1288 [(10th Cir. 2000)](citing *Sanchez* [*v. Philip Morris Inc.*], 992 F.2d [244,] 246 [(10th Cir. 1993)]).[2]

*Tyler*, 232 F.3d at 812 (first omission in original, internal quotations omitted).

---

[2]   Accordingly, the Court instructed the Jury that for Ms. Walton to recover on her race discrimination claims, she had the burden of proving by a preponderance of the evidence:

. . . .

**FIRST:** THAT WASTE MANAGEMENT DISCRIMINATED AGAINST HER (1) BY HIRING HER IN AN HOURLY CLERICAL POSITION INSTEAD OF THE PROFESSIONAL MANAGERIAL POSITION WHICH IT ADVERTISED, AND/OR (2) BY FAILING TO GIVE HER THE NINETY-DAY EVALUATION IT SAID IT WOULD GIVE HER AND THEREFORE FAILING TO RECONSIDER HER TITLE, PAY, AND STATUS AS HOURLY OR SALARIED, AND/OR 3) BY FAILING TO RECLASSIFY HER JOB POSITION AS PROFESSIONAL OR MANAGERIAL WITH AN APPROPRIATE INCREASE IN PAY AND AN APPROPRIATE JOB TITLE; AND

**SECOND:** MS. WALTON'S RACE WAS A MOTIVATING FACTOR IN ONE OR MORE OF WASTE MANAGEMENT'S DECISIONS.

. . . .

(Court's Jury Instructions, Jury Instruction No. 9 (Docket No. 150).)

Thus, while establishing Defendant's more favorable treatment of similarly situated employees who were not African Americans may have been element of Plaintiff's prima facie case at the pre-trial summary judgment stage,[3] it was not an element of Plaintiff's disparate treatment claim at trial, and therefore cannot be dispositive of that claim.[4]  Rather, it would be some evidence, but not necessarily the only evidence, of discriminatory motive on the part of Waste Management. Indeed, given the Jury's finding that Waste Management discriminated against Ms. Walton on the basis of race in her hire, it certainly would not be unreasonable for the Jury to further find that that discriminatory intent carried through and was a motivating factor in Defendant's subsequent decisions not to rectify the situation by evaluating Plaintiff after 90 days had passed, thereby failing to reconsider her title, pay and status as an hourly employee, or by reclassifying her job position as professional or managerial, with an appropriate increase in pay and an appropriate job title.  *See Tyler*, 232 F.3d at 814 ("[W]hen the plaintiff casts substantial doubt on many of the employer's multiple reasons [for its adverse employment action], the jury could reasonably find the employer

---

[3]     Articulation of a plaintiff's prima facie case can vary, depending on the context of the claim and the nature of the adverse employment action alleged.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)(citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).  For example, "[c]ollapsing the four-part prima facie case of *McDonnell Douglas* into a three-part test may occasionally be helpful when addressing discrimination claims that either do not fall into any of the traditional categories (e.g. hiring or discharge) or present unusual circumstances." *Id.* at 1227 n.6.  In any case, "the three-part *McDonnell Douglas* burden-shifting analysis is limited to the summary judgment context."  *Id.* at 1226.  *See also EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 n.6 (10th Cir. 2000)("Nothing in the case law in this circuit *requires* a plaintiff to compare herself to similarly-situated co-workers to satisfy the fourth element of her prima facie case.").

[4]     Thus, the Court instructed the Jury that

AN EMPLOYEE *MAY RAISE AN INFERENCE* THAT RACE WAS A MOTIVATING FACTOR BY OFFERING EVIDENCE COMPARING HERSELF TO SIMILARLY SITUATED INDIVIDUALS WHO ARE NOT A MEMBER OF THAT PROTECTED CLASS, WHO WERE TREATED MORE FAVORABLY. . . .

(Court's Jury Instructions, Jury Instruction No. 11 (emphasis added).)

7

lacks credibility.  Under those circumstances the jury need not believe the employer's remaining reasons." (internal citations omitted)).

## Retaliation

Waste Management maintains that Plaintiff proved none of the essential elements of her retaliation claim.  To establish a prima facie case of retaliation, Ms. Walton "must establish that (1) [s]he engaged in protected opposition to discrimination; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."  *O'Neal*, 237 F.3d at 1252 (citing *Kendrick*, 220 F.3d at 1234; *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 & n.1 (10th Cir. 1998)).

Pursuant to Title VII, " '[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has *opposed* any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or *participated* in any manner in an investigation under this subchapter.' "  42 U.S.C. § 2000e-3(a) (emphasis added), quoted in *Jeffries*, 147 F.3d at 1231.  Waste Management contends that Ms. Walton did not engage in protected activity because she failed to prove that she opposed conduct that she reasonably believed to be a Title VII violation, *see Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171-71 (10th Cir. 2003)(plaintiffs are protected from retaliation when they challenge conduct that they have a reasonable good-faith belief is prohibited by Title VII, even when the underlying conduct may not constitute a violation), and because she did not participate in an investigation of an EEOC charge, *see EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000)(participation clause "protects proceedings and activities which occur in conjunction with or

after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC").

Plaintiff offered substantial evidence at trial of her reasonable belief of Title VII violations with regard to several investigations with which she was involved at Waste Management. Many of these incidents involved Mr. Kachirisky, whom she believed was being favorably treated on the basis of his race in violation of Title VII. These included the Cordova incident, where Ms. Walton recommended similar discipline for both Mr. Kachirisky and Mr. Cordova, but Mr. Cordova, a Hispanic, only a week later was told he could resign or be fired; instances of favoritism to Hispanics regarding the length of their work day and making Anglo drivers take out unsafe trucks, causing four drivers to voluntarily resign; and the Owen's investigation, wherein Mr. Owen filing an EEOC charge of race discrimination on January 3, 2001. While participating in this last investigation, Ms. Walton discovered several additional allegations against Mr. Kachirisky: that he altered time records, reducing the hours of  Hispanic drivers on the basis of their race and in retaliation for their complaints, and that previous allegations of sexual harassment by two women employees against Mr. Kachirisky had been not been properly documented and were covered up by Waste Management. Ms. Walton also related incidents of harassing comments and conduct based on gender directed at her and other women by Mr. Jordan, in addition to his referring to an employee as a "wetback." Although Waste Management, of course, offered a different slant on most of these incidents, there was sufficient evidence offered by Plaintiff from which the Jury could find protected activity on her part: that she opposed conduct which she had a reasonable good-faith belief was in violation of Title VII and that she participated in a Title VII investigation. Additionally, as discussed

above with regard to the discrimination claims, Plaintiff provided substantial evidence that she suffered an adverse employment action.

The third element of a retaliation claim, establishing a causal connection between the protected activity and the adverse employment action, may be shown by "' producing evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999)(quoting *Burrus v. United. Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)). In other words, Plaintiff must present evidence that Waste Management "undertook the adverse employment action for the purpose of retaliation." *Id.* at 1320-21. Additionally, Plaintiff must show that her "superiors knew that she was engaging in protected opposition." *Peterson v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

Ms. Walton presented substantial evidence of a nexus between her protected activity and Waste Management's failure to conduct any evaluation and thus consider her job upgrade, title upgrade, and raise. Plaintiff presented evidence that during her first months with Waste Management she personally experienced and investigated sexually and racially harassing behavior of Jim Jordan. Plaintiff testified that she discussed these instances with Mr. Jordan, Ms. Feuer, and an attorney for the Company. This was followed by Waste Management's failure to give Plaintiff the promised evaluation.

Although the ninety-day, probationary evaluation never took place, Plaintiff was led to believe that her situation eventually would be addressed. In late January 2001, however, Ms. Feuer told Plaintiff that she would get no raise, other than a standard 3% increase after one year. In early February, Ms. Feuer told Plaintiff that there would be no change in job title or pay status. These

decisive developments occurred only weeks after Ms. Walton began her internal investigation for Waste Management of the Owen's EEOC charge claiming racial discrimination, which clearly involved protected activity known to Defendant, and during which Plaintiff discovered the additional claims against Mr. Kachirisky - the allegedly improperly handled sexual harassment complaints by two women employees against Mr. Kachirisky from the previous year and the claims of racial discrimination and retaliation involving changes to several drivers' time cards.  Not only did Joe Capone, a district manager, tell Plaintiff that she was "too thorough" and "stacking the deck" against Mr. Kachirisky, but she was taken off the Owens investigation after she refused to comply with orders to not tell an outside attorney for the Company about the sexual harassment allegations and to inform the drivers that there were no problems with the time card changes.  Additionally, Mr. Atcovitz, Waste Management's Area Human Resources Director for the west region, recommended eliminating Ms. Walton's position, based at least in part on her involvement with the Owen's matter.  Clearly there was substantial evidence from which the Jury could find for Ms. Walton on her retaliation claim.

**MOTION FOR NEW TRIAL**

Waste Management moves for a new trial on three grounds: that the evidence overwhelmingly supported the defense, that the verdict as to Plaintiff's discrimination in hiring claim was prejudicially tainted by Jury Instruction No. 21, and that the compensatory damage award[5] was unreasonably excessive.

---

[5]     While Defendant requests a new trial as to compensatory damages, the main thrust of its argument is for remittitur.  Thus, the compensatory damages issues are discussed below under "Motion for Remittitur."

11

**Standard**

Whether to grant a new trial pursuant to FED. R. CIV. P. 59 is committed to the sound discretion of the Court. *Gust v. Jones*, 162 F.3d 587, 591 (10th Cir. 1998). Such motions, however, are "not regarded with favor and should only be granted with great caution." *Deters v. Equifax Credit Info. Servs., Inc.* 981 F. Supp. 1381, 1385 (D. Kan. 1997)(quoting *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991)). Thus, "[t]he party seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

**Evidence**

As discussed above, the evidence did not overwhelmingly support Waste Management. Rather, Plaintiff presented substantial evidence supporting the Jury's verdict in her favor on the discrimination and retaliation claims.

**Jury Instruction No. 21**

Waste Management maintains that Jury Instruction No. 21,[6] an adverse inference instruction regarding the missing resumes of other applicants for the Human Resources Manager position, should not have been given to the Jury and impermissibly tainted the verdict on Ms. Walton's hiring

---

[6]   Jury Instruction No 21 provided:

IT IS PERMISSIBLE FOR YOU TO INFER THAT ANY EVIDENCE THAT WAS INTENTIONALLY DESTROYED, CONCEALED, MUTILATED, OR ALTERED BY WASTE MANAGEMENT OF NEW MEXICO IN THIS CASE IN BAD FAITH WOULD HAVE BEEN UNFAVORABLE TO WASTE MANAGEMENT OF NEW MEXICO AND WOULD HAVE AIDED OR ASSISTED MS. WALTON IN PROVING HER CLAIM OF RACIAL DISCRIMINATION IN HER HIRE. YOU MAY USE THIS INFERENCE AGAINST WASTE MANAGEMENT TO ASSIST YOU IN DECIDING WHETHER OR NOT WASTE MANAGEMENT RACIALLY DISCRIMINATED AGAINST JEANA WALTON IN HER HIRE.

(Court's Jury Instructions, Jury Instruction No. 21 (Docket No. 150).)

discrimination claim.  Defendant argues that there was no evidence establishing that the resumes of the other job applicants for the human resources position were destroyed in bad faith, or even intentionally destroyed.

"[I]t is error to give an instruction when there is no evidence to support it."  *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1297 (10th Cir. 1989).  Thus, "[s]ufficient competent evidence is required," more than a "mere  scintilla."  *Id.*

Noting the lack of precedent  in the circuit, the Tenth Circuit Court of Appeals described the general rule regarding the evidentiary doctrine of spoilation in *Aramburu v. Boeing Co.*:

> [B]ad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction.  *See Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985); *see generally, Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D. Fla. 1987).  The adverse inference must be predicated on the bad faith of the party destroying the records. *See Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975); *see also Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir. 1988)).  Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Vick*, 514 F.2d at 737.

112 F.3d 1398, 1407 ( 1997).

The Second Circuit Court of Appeals has further delineated the burden to be met by the party seeking an adverse inference regarding the content of destroyed evidence.  *See Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-11 (2001).  First, the proponent must "show that 'the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed.'" *Id.* at 107 (omission in original)(quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  Second, a case by case approach is appropriate in determining what state of mind a party must have when destroying the evidence, at times intentional destruction is required, while in other instances

bad faith or gross negligence may be sufficient.  *Id.* at 107-08.  Finally, the "court must determine 'whether there is any likelihood that the destroyed evidence would have been of the nature alleged by the party affected by its destruction.'"  *Id.* at 108 (quoting *Kronisch*, 150 F.3d at 127).  Thus, the "burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.'"  *Id.* (quoting *Kronisch*, 150 F.3d at 128).

It is undisputed that none of the resumes of other applicants for the Human Resources Manager position were produced by Defendant.  Additionally, except for Carol LeSage, there were no records identifying any of the other applicants for the position.  There was evidence, however, that Waste Management had a policy of retaining such information for at least one year and that EEOC regulations require this information to be kept for two years.  Additionally, Plaintiff testified she did not see any of the resumes when she filed two years' worth of old resumes and applications in July or August 2000.

> As discussed in *Byrnie*,
>
> several courts have held that the destruction of evidence in violation of a regulation that requires its retention can give rise to an inference of spoliation.  *See Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998)("The violation of a record[-]retention regulation creates a presumption that the missing record contained evidence adverse to the violator."); *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994)(because employer violated record retention regulation, plaintiff "was entitled to the benefit of a presumption that the destroyed documents would have bolstered her case:); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir. 1987)(same); *see also* Steffen Nolte, *The Spoliation Tort: An Approach to Underlying Principles*, 26 St. Mary's L.J. 351, 368-69 (1995)(collecting cases announcing a tort cause of action for spoliation based on violation of record-retention regulations).

Id. at 108-09 (alteration in original).  Thus, "under some circumstances, such a regulation can create the requisite obligation to retain records, even if litigation involving the records is not reasonably

foreseeable." *Id.* at 109. Such circumstances include when "the party seeking the inference [is] a member of the general class of persons that the regulatory agency sought to protect in promulgating the rule." *Id.* Thus, "where, as here, a party has violated an EEOC record-retention regulation, a violation of that regulation can amount to a breach of duty necessary to justify a spoliation inference in an employment discrimination action." *Id.* (citing *Favors*, 13 F.3d at 1239 (Title VII rules, Title VII action); *Hicks*, 833 F.2d at 1419 (same)). This follows because "the responsible agency had in mind persons in the plaintiff's position and accordingly . . . finding a duty to preserve documents in such circumstances will advance the goals of the rule." *Id.*

Thus, a regulation may supply the duty to preserve records, meeting the first element of proof that a party seeking to benefit from an inference of spoliation must meet. *Id.* That party must then demonstrate that "the records were destroyed with a culpable state of mind (i.e. where, for example the records were destroyed knowingly, even if without intent to violate the regulation, or negligently)." *Id.* And finally, "a party must show that the destroyed records were relevant to the party's claim or defense." *Id.*

As a major element of its defense to Plaintiff's discriminatory hiring claim, Waste Management claimed to have notified all applicants, including Ms. Walton, of the "mistake" in its advertising and postings for the position. Obviously, not knowing who the other applicants were made it impossible for Ms. Walton to rebut this argument, except through her testimony as to her own experience.

The Court finds, given the Company's internal retention policy, much less the EEOC regulations, that there was evidence of at least negligent destruction of the resumes. Furthermore, despite Waste Management's argument to the contrary, the retention of only certain documents, the

job postings and ads publicizing the position and those relating to the offer of the position to Ms.

LeSage, provides sufficient evidence from which the Jury could find intentional, or even bad faith,

destruction of the resumes.   Under the circumstances, only intentional destruction need be shown,

*id.*, but the Jury clearly was not errant in its finding of bad faith, "an intent to obstruct the opposing

party's case," *id.*, given the taint surrounding Plaintiff's discriminatory hire and the lengths to which

Defendant went to obfuscate its actions and motives.   Finally, Defendant makes no argument that

the missing documents would not have been relevant to Plaintiff's case.

## MOTION FOR REMITTITUR

Waste Management contends that there is no basis in the record for the Jury's award of

compensatory damages and that the award of $125,000 is excessive and should be remitted or a new

trial ordered.  The Court does not agree.

An award of compensatory damages must be supported by substantial evidence. *Wulf v. City*

*of Wichita*, 883 F.3d 842, 874 (10th Cir. 1989).  Medical or other expert evidence, however, is not

required to prove emotional distress.  *O'Neal*, 237 F.3d at 1257 n.1 (citing *Roberts*, 149 F.3d at 1105

n.4).  "[A]bsent an award so excessive as to shock the judicial conscience and to raise an irresistible

inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's

determination of the damages is considered inviolate."   *Fitzgerald v. Mountain States Tel. & Tel.*

*Co.*, 68 F.3d 1257, 1261-62 (10th Cir. 1995)(quoting *Malandris v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1981)(en banc)).

Ms. Walton offered substantial evidence in support of her claim for compensatory damages.

She testified about being feeling embarrassed, angry, humiliated, and denigrated.  She was so upset

she could not sleep at night and was unable to eat, going from a ten to a six clothing size.  She felt

dysfunctional, sick to her stomach, and was subject to spontaneous, unaccountable bouts of crying, behaving like "Jekyll and Hyde." This led to serious problems with her family, causing her to seek help from a friend who was a psychologist and to consult with her pastor. While the immediate effects lasted almost a year, she testified to still becoming emotionally upset when trying to talk about what had happened.

In addition to being subjected to racial discrimination from the time of her hire throughout her employment with Waste Management and to retaliatory behavior, Plaintiff suffered financial hardship once she severed her relationship with the Company. She spent almost a year trying to find a new job, eventually having to move out of state to find suitable employment and was unable to continue working in the human resources field.

The Jury's award of $125,000 in compensatory damages does not shock the Court's conscience. In fact, given the context of the discriminatory behavior in this case, beginning at the very onset of Plaintiff's employment, and the cumulative evidence regarding the nature of her emotional harm, the Court cannot say that the award is unreasonable, much less influenced by passion and prejudice. Additionally, the Court is not convinced by Defendant's resort to cases almost a decade or more old to support of the proposition that such damages should be limited as a matter of course to $50,000; moreover, many of these cases are distinguishable on their facts. *See, e.g., Wulf*, 883 F.2d 842 (1989); *Fitzgerald*, 68 F.3d 1257 (1995)(emotional distress damages attributable to multiple causes, many not responsibility of defendant); *Hughes v. Regents of the Univ. of Colo.*, 967 F. Supp. 431, 437-39 (D. Colo. 1996)(relying heavily on *Wulf*; citing awards in cases dating from 1995 and earlier; no evidence of diminution of salary, decreased benefits, other economic loss and plaintiff "bumped" to job with equivalent pay, hours, benefits). *But see, e.g.,*

17

*O'Neal*, 237 F.3d 1248 (2001)(damages for future emotional distress properly submitted to jury, even though evidence not overwhelming; award of $302,721.25 affirmed); *Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1416-17 (10th Cir. 1997)(affirming award of statutorily capped compensatory damages of $200,000); *Goico v. Boeing Co.*, 358 F. Supp. 2d 1028 (D. Kan. 2005)(court viewed award as generous, particularly as plaintiff not terminated but continued employment as Boeing engineer and compensated accordingly, but denied remittitur or new trial of jury's award of compensatory damages of $625,000, statutorily capped at $300,000).

**PUNITIVE DAMAGES**

Waste Management also contends that the Jury's award of $500,000 in punitive damages must be vacated or reduced, arguing that the evidence does not support an award of punitive damages, the award was excessive as a matter of law, and the award violates due process and must be reduced. As set forth by the Tenth Circuit Court of Appeals, punitive damages are available in employment discrimination cases

> if the plaintiff proves that an employer engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1)(1994).
>
> > [The] standard for punitive damages cannot be satisfied by a showing of intentional discrimination alone. Otherwise, every jury verdict in a successful § 1981 or § 1982 claim would include an award of punitive damages. Instead, . . . a plaintiff must prove that the defendant acted with malicious, willful or gross disregard of a plaintiff's rights over and above intentional discrimination.
>
> *The Guides*, 295 F.3d at 1077; *see also Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999)("Congress plainly sought to impose two standards of liability–one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award."). A plaintiff must present evidence that the defendant intentionally discriminated against him on the basis of race with malice or "in the face of" a perceived risk that its actions would violate

federal law.  *See Kolstad*, 527 U.S. at 535-36 ("The employer must act with malice or with reckless indifference to the [plaintiff's] federally protected rights.").

*Juarez v. ACS Gov't Solutions Group, Inc.*, 314 F.3d 1243, 1246-47 (2003)(alterations, in original; parallel citations omitted).

Plaintiff presented substantial evidence allowing the Jury to find that Waste Management acted with malice or with reckless indifference to Plaintiff's federally protected rights.  This most certainly is the case in regard to the circumstances of Plaintiff's hire: after advertising for a Human Resources Manager for almost half a year, and offering the managerial, salaried position of Human Resources Representative to a Caucasian, Defendant hired Plaintiff, an applicant for exactly the same position as Ms. LeSage, to a clerical, nonexempt position of Human Resources Specialist. Additionally, there was sufficient evidence showing that the Company  lied to Ms. Walton about a "mistake" in the notices announcing the manager position, and attempted to cover-up by purging the resumes of every other applicant.  Additionally, Defendant continued and exacerbated its discriminatory behavior throughout Plaintiff's employment by refusing to conduct a promised probationary evaluation, thereby denying Plaintiff any opportunity to upgrade her position, and also by retaliating against her.  Furthermore, Defendant's reliance on *The Guides, Ltd.* is not persuasive.[7]

The Court also is not convinced by Plaintiff's assertion that the Jury's award was influenced by passion, prejudice, or some other improper motive, thereby being so excessive as to require a new

---

[7]       The direct victim of discrimination in *The Guides, Ltd. v. Yarmouth Group Prop. Mgmt.* was a corporation; the appellate court affirmed the district court's dismissal of the individual plaintiff and setting aside of  damages awarded to her on grounds of lack of standing.  295 F.3d. 1065, 1071-73 (10th Cir. 2002).  The court then reversed district court on the award of $1 million in punitive damages to the corporation, stating, without explanation, that "there is no evidence which would show that the defendants acted in malicious or willful disregard of Africa House's rights."  *Id.* at 1077.

trial or remittitur. Defendant also contends that the Court should look to the maximum statutory damage cap under Title VII for guidance as what is appropriate under § 1981.

Waste Management offers no authority showing that an award of $500,000 in punitive damages on its face must be influenced by passion or prejudice, and the cases it does cite are inapposite. *See Malandris*, 703 F.2d 1152 ($3,000,000 punitive award excessive, remitted to $1,000,000); *Atencio v. City of Albuquerque*, 911 F. Supp. 1433, 1448 n.6 (D.N.M. 1995)(court does not consider whether $3,000,000 punitive award excessive, but states that if it had, would not find that excessiveness gives rise to inference of passion or prejudice). Additionally, even though Title VII might provide some insight into what Congress believes to be an appropriate level of punitive damages under § 1981, this proposition is less than convincing, as Congress has not seen fit to so limit damages under the latter statute.[8] The Court also finds Defendant's statement that it did not have adequate notice of the possibility that a judgment of this magnitude might be made against it without merit.[9] And finally with regard to Defendant's claim of excessiveness, the Court is perplexed by its argument and citation in a footnote to an unpublished opinion involving witness tampering, the creation of false witness statements, and perjury as a basis to vacate or reduce the punitive and compensatory damages in this case because Plaintiff allegedly committed resume fraud.

---

[8]  The appellate court in *Swinton v. Potomac Corp.*, cited by Defendant, noted that while the Title VII damages cap may be considered as an analogous sanction in determining the constitutionality of punitive damages award, as directed by the Supreme Court in *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996), "Congress has not seen fit to impose any recovery caps in cases under § 1981 . . . , although it has had ample opportunity to do so since the 1991 amendments to Title VII. 270 F.3d 794, 820 (9th Cir. 2001). The court then affirmed a punitive damages award in the amount of $1,000,000. *Id.*

[9]  *See supra* note 9 (Section 1981 case cited to the Court by Defendant affirms punitive damages award of $1,000,000); *infra* pp. 22-23, discussing comparable penalties under due process analysis.

*See Quela v. Payco-General Am. Credits, Inc.*, No. 99C1904, 2000 WL 656681 (N.D. Ill. Mar. 26, 2000).

Defendant's final argument concerning the punitive damage award is that it violates due process. The Supreme Court has set forth the standard for constitutionally excessive punitive damages awards: "One must receive fair notice both that certain conduct will subject him to punishment, and the possible severity of the punishment that may be imposed." *Deters*, 202 F.3d at 1272 (citing *Cont'l Trend Res. Inc. v. OXY USA Inc.*, 101 F.3d 634, 636 (10th Cir. 1996)(quoting *BMW of N. Am. v. Gore*, 517 U.S. 559, 574 (1996))). Three "guideposts" assist the Court in determining whether a defendant has received fair notice: "First, and most important is the reprehensibility of [the] defendant's conduct. Next is the ratio of the punitive damage award to the compensatory damage award. Third is the measure of the punitive damage award in relation to awards for comparable misconduct." *Hampton*, 247 F.3d at 1116 (internal quotations and citations omitted)(citing *Deters*, 202 F.3d at 1272). The Court "also must keep in mind the deterrent goal of punitive damages in conjunction with the impact the size of the award will have on a defendant and with the wealth and size of the defendant as relevant factors." *Id.* (citing *Deters*, 202 F.3d at 1272).

The Court is unpersuaded by Waste Management's arguments that the award of punitive damages in this matter violates its constitutional right to due process. The availability of punitive damages under § 1981 is well established: "[Section] 1981 affords a federal remedy against discrimination in private employment on the basis of race. An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975)(quoted parenthetically in *Hampton*, 247 F.3d at 1116)(alteration in original); *see also*

*Deters*, 202 F.3d at 1272 (Defendant "certainly had notice that it could be subject to punitive damages for involvement in discriminatory practices with malice or with reckless indifference to an individual's federally protected rights, by virtue of the plain language of Title VII itself.").

As discussed above there was substantial evidence from which the Jury could find that Waste Management acted with reckless indifference, or even malice, with regard to Plaintiff's federally protected rights.  The Company's discriminatory conduct began at Ms. Walton's job interview, continued throughout her employment, and included lying and a cover up.  Reviewing the facts in the light most favorable to Plaintiff, the Jury clearly was justified in finding this behavior reprehensible.

Additionally, the ratio of punitive damages to compensatory and actual damages, less than 4 to 1, is in no way suspect, much less wholly disproportionate.  *See, e.g., Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1120-23 (10th Cir. 2004)(affirming district court's determination that ratio of 20 to 1 appropriate, even though "the Supreme Court has recently held that 'in practice, few awards exceeding a single-digit ration between punitive and compensatory damages, to a significant degree, will satisfy due process.' [*State Farm Mut. Auto. Ins. Co. v.*] *Campbell*, [538 U.S. 408, 425 (2003)]"); *Hampton*, 247 F.3d at 1116-17, 1121(ratio of 20 to 1 justified, not impermissibly excessive or constitutionally disproportionate);  *Deters*, 202 F.3d at 1273 (where injury primarily personal, greater ratio than 10 to 1 may be appropriate; affirming ratio of 59 to 1)..

Finally, as to the third guidepost, this award is not constitutionally suspect when compared to sanctions for similar misconduct.  Defendant's position that it was not on notice that it might face an award of punitive damages of this magnitude borders on the frivolous.  *See* 42 U.S.C. § 1981a(b)(4) ("Nothing in this section [Damages in cases of intentional discrimination in

22

employment] shall be construed to limit the scope of, or the relief available under, section 1981 of this title."); *Deters*, 202 F.3d at 1272 (notice imputed by virtue of plain language of statute itself); *Hampton*, 247 F.3d at 1117 ("Section 1981 does not have a statutory cap that limits punitive damages as does Title VII."). Additionally, as discussed above, the Court is not convinced that comparison to Title VII's $300,000 damages cap is appropriate. *See also Hampton*, 247 F.3d at 1117 (noting that "[§] 1981 does not have a statutory cap that limits punitive damages as does Title VII," court does not address Title VII cap in deciding third prong of *BMW* inquiry in § 1981 case). In sum, the Court finds that the award in this matter is falls well within the constitutional range of allowable awards in other cases involving malicious or reckless violation of rights under § 1981. This award does not "shock the judicial conscience [or] constitute a denial of justice." *Id.* (quoting *Deters*, 202 F.2d at 1273). Waste Management does not argue that the award will "result in [its] financial ruin" or that it is "a disproportionally large percentage of its net worth." *Id.* (alteration in original)(quoting *Luciano v. Olsten Corp.*, 110 F.3d 210, 221 (2d Cir. 1997)). And finally, the Court is cognizant that "[t]here is more than a mere possibility that the punitive damage award[] in this case w[as] properly intended 'to punish what has occurred and to deter its repetition.'" *Hardeman*, 377 F.3d at 1123 (quoting *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1309 (10th Cir. 2003)).

WHEREFORE,

**IT IS HEREBY ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for Remittitur or New Trial (Docket No. 156) is **DENIED**.

_____

**SENIOR UNITED STATES DISTRICT JUDGE**